UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA,

    v.             **MEMORANDUM & ORDER**
                    22-CR-243 (WFK)

MATTHEW SANCHEZ,

       Defendant.
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**
On January 29, 2024, Defendant pled guilty to Counts Two and Three of the Superseding Indictment in 22-CR-243,[1] charging him with Hobbs Act Robbery and Attempted Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a). Plea Agreement ¶ 1, ECF No. 87; Superseding Indictment ¶¶ 2–3, ECF No. 56. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to 120 months' imprisonment, to run consecutively to his state sentence, to be followed by three years of supervised release with both the special and standard conditions of supervision as well as the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d); restitution in an amount to be determined; forfeiture in accordance with the Amended Order of Forfeiture; and payment of a mandatory special assessment of $200.00.

## I. BACKGROUND

*Months-Long Plan to Rob Jane Doe One and Jane Doe Two*

In late October 2020, Defendant and co-defendant Catoe began discussing the possibility of robbing Jane Doe One and Jane Doe Two. Sealed PSR ¶ 9–10. On January 3, 2021, Defendant texted Catoe: "I think I got an idea of where that bitch [co-conspirator 1] want to get lives at. The [Jane Doe 2] bitch wit all those watches; I seen her friend put a story up that had a address; In NJ ima check it out." Government Sentencing Memorandum at 1 ("Gov't Sent'g Mem."), ECF No. 148. Catoe later texted Defendant and told him that two co-conspirators had learned where Jane

---

[1] All docket citations and references to "Counts" of convictions refer to 22-CR-243 as to Defendant Matthew Sanchez unless otherwise stated.

1

Doe One and Jane Doe Two worked as dancers in Queens, New York. Sealed PSR ¶¶ 10–11. Catoe told Defendant to bring his GPS so that they could tag the victims' cars and "find out where they live." *Id.* In January 2021, Defendant texted Catoe "2nite is our [second] chance for [I don't know] how long to take [Jane Doe Two's] car. You gon be able to get ya gps or nah?" *Id.* ¶ 11. Between October 2020 and the first robbery on January 27, 2021, Defendant and Catoe attached GPS tracking devices to Jane Doe One's and Jane Doe Two's cars. *Id.* Defendant and Catoe also regularly visited both the victims' residences and workplaces in the weeks leading up to the first robbery. *Id.*

Defendant and Catoe also exchanged text messages recognizing that Jane Doe One had young children who might be present at her residence during a robbery. *Id.* ¶ 12. On January 26, 2021, Defendant texted Catoe: "God willing her crib EMPTY with nobody there; Make shit easy for us." *Id.* ¶ 12; Gov't Sent'g Mem. at 1–2. Ultimately, on the possibility of children being present, Catoe texted Defendant, "idc [I don't care]," and Defendant replied, "Me either." Sealed PSR ¶ 12. Defendant and Catoe also discussed, over text message, the use of both real and fake firearms in connection with other criminal activity. *Id.* ¶ 15–18.

*Robbery on January 27, 2021*

In the early morning of January 27, 2021, Defendant and Catoe broke into Jane Doe One's residence. *Id.* ¶ 7. Jane Doe One was not home at the time, but her partner and young children were. *Id.* Defendant and Catoe zip-tied Jane Doe One's partner in the bathroom, put a weapon to his head, and demanded money and property. *Id.* Defendant and Catoe stole cash proceeds of Jane Doe One's and Jane Doe Two's work of approximately $14,110.00, as well as luxury handbags worth approximately $22,114.00. Defense Counsel's Objections to the PSR at 2–3, ECF

2

No. 134; Sealed PSR ¶ 7. Authorities have not to date recovered the cash taken by Defendant and Catoe. Sealed PSR ¶ 7.

### *Disposition of Stolen Cash and Sales of Stolen Goods*

After the January 27, 2021, robbery, Catoe brought the stolen cash to Philadelphia, Pennsylvania. *Id.* ¶ 14. Catoe and his girlfriend deposited the cash into his girlfriend's account in the amounts of $600.00, $97.00, $2,000.00, $2,006.00, and $5,007.00. *Id.* Defendant later sent Catoe photos of seven luxury handbags, writing "2 being sold" and that someone "might have all em sold for a higher price for us." *Id.* ¶ 13.

### *Attempted Robbery on February 5, 2021*

In the early morning of February 5, 2021, Catoe and co-defendant Mitchell broke into Jane Doe One's residence. *Id.* ¶ 8. Defendant worked as the getaway driver during this second robbery. *Id.* Jane Doe One, her partner, their two children, and two of the couple's friends were home. *Id.* Catoe and Mitchell ordered Jane Doe One and her partner to the bathroom, where they zip-tied them. *Id.* According to Jane Doe One, Catoe told Jane Doe One to take off her underwear. Gov't Sent'g Mem., Ex. 1 ("Victim Impact Statement") at 1, ECF No. 148-1. Catoe and Mitchell pointed their weapons at the two young children. Sealed PSR ¶ 8. While Catoe and Mitchell searched the house, one of the children called the police. *Id.* After NYPD officers arrived, the defendants fled. *Id.* They left behind a Daisy Air Rifle BB gun and Catoe's cell phone. *Id.*

### *Discussions of Future Robberies*

In April 2021, Defendant began serving his ten-year sentence in Oklahoma state prison for narcotics trafficking. Gov't Sent'g Mem. at 5. While in custody, Defendant discussed future robberies of Jane Does 1 and 2. *Id.* On August 18, 2021, for instance, Defendant called his girlfriend, and his girlfriend expressed she had "a very nice purse collection" thanks to Defendant.

3

*Id.* A warrant-based search on June 2, 2022, of Defendant's girlfriend's residence confirmed Defendant had indeed given her proceeds from the robbery. *Id.* On a recorded March 4, 2022, jail call, Defendant told his girlfriend he would have co-defendant Catoe "pull up on" Jane Doe 2 and rob her of another luxury handbag after Defendant "g[o]t back." *Id.*

*Procedural History*

On September 6, 2022, Defendant was writted into federal custody from Oklahoma state custody for an unrelated, prior felony charge. *Id.* ¶ 24. On June 12, 2023, a grand jury returned a five-count Superseding Indictment against Defendant, Catoe, and Mitchell. Superseding Indictment ¶¶ 1–9. On January 29, 2024, Defendant pled guilty to Counts Two and Three of the Superseding Indictment, which charged him with Hobbs Act Robbery and Attempted Hobbs Act Robbery respectively, both in violation of 18 U.S.C. § 1951(a). Plea Agreement ¶ 1. Pursuant to the plea agreement, Defendant agreed not to file an appeal or otherwise challenge his sentence if the Court imposed a term of imprisonment of 135 months or below. *Id.* ¶ 4.

On January 22, 2024, co-defendant Romel Catoe pled guilty to one count of Hobbs Act Robbery and one count of Attempted Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a). Plea Agreement as to Romel Catoe in 22-CR-243 (S-1), ECF No. 83. On January 10, 2025, the Court sentenced Catoe to 120 months' incarceration on each count, to run concurrently, followed by two years of supervised release on each count, with both standard and special conditions. *See* Memorandum and Order as to Romel Catoe, ECF No. 126; Judgment as to Romel Catoe, ECF No. 124.

On February 15, 2024, co-defendant Kareef Mitchell pled guilty to one count of Hobbs Act Robbery Conspiracy, in violation of 18 U.S.C. § 1951(a). Plea Agreement as to Kareef Mitchell in 22-CR-243 (S-1), ECF No. 91. On March 13, 2025, the Court sentenced Mitchell to seventy

months' incarceration, to run consecutively to a separate state sentence, followed by two years of supervised release with both standard and special conditions. *See* Memorandum and Order as to Kareef Mitchell, ECF No. 147; Judgment as to Kareef Mitchell, ECF No. 145.

## II. LEGAL STANDARD

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553. Together with 18 U.S.C. § 3553, the United States Federal Sentencing Guidelines operate as the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.* The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among similar defendants found guilty of similar conduct; and

(7) the need to provide restitution to victims of the offense. *See* 18 U.S.C. § 3553(a). The Court now addresses each factor.

### III. ANALYSIS

#### A.  The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

##### 1. *Family and Personal Background*

Defendant was born on September 5, 1992, in Brooklyn, New York. Sealed PSR ¶ 84. Defendant's father has been absent from his life. *Id.* Defendant states his father was once arrested for a crime involving cars. *Id.* Defendant's mother is a home health aide. *Id.* Defendant's mother is aware of the instant case and supportive of Defendant. *Id.* Defendant has three siblings, two of whom are adults and one of whom is a minor, who remain supportive of Defendant. *Id.* ¶ 85.

Defendant was raised primarily by his mother and other maternal figures. *Id.* ¶ 87. He reports at least ten of his friends died during their youth, due to the "rough" nature of the Fort Greene neighborhood during his childhood. *Id.* ¶ 88. Growing up, Defendant's needs were met, but he often wondered if he would have enough for the next day. *Id.* ¶ 89. He did not experience abuse in his childhood, but reports feeling neglected because his father was absent and his mother worked all day. *Id.* ¶ 90.

Defendant has been in a long-term, serious relationship with his current partner, the mother of his child and to whom he is engaged. *Id.* ¶ 93. She is aware of the instant case, communicates as often as possible with Defendant, and remains supportive of him. *Id.*

2. *Educational and Employment History*

Defendant graduated from Progress High School in Brooklyn in 2010. *Id.* ¶ 109. He attended one semester of college at the Borough of Manhattan Community College in 2012. *Id.* ¶ 108. After Hurricane Sandy struck New York, Defendant decided not to return to school. *Id.* In 2019, Defendant completed most of an emergency medical technician (EMT) course at LaGuardia College, but did not finish the program after the COVID-19 pandemic struck in 2020. *Id.* ¶ 110.

Between approximately 2010 and 2013, Defendant worked as an overnight stockperson at a CVS Pharmacy, a cashier at a Payomatic check cashing business, and a cashier and stockperson at a Home Depot. *Id.* ¶¶ 114, 116–17. Between 2013 and 2018, Defendant performed odd jobs around the New York City area. *Id.* ¶ 113. From approximately 2018 to 2021, Defendant was unemployed and collected unemployment assistance. *Id.* ¶ 112. Defendant has been incarcerated since June 23, 2021. *Id.* ¶ 111.

3. *Prior Convictions*

In addition to the conduct charged in the instant case, Defendant has three prior convictions. In 2010, at age seventeen, Defendant was arrested for assault. *Id.* ¶ 75. In 2011, at age nineteen, Defendant was arrested for petit larceny. *Id.* ¶ 76. In 2015, at age twenty-three, Defendant was arrested for the sale of heroin. *Id.* ¶ 77. Defendant is currently serving a ten-year sentence in an Oklahoma state correctional facility for this 2015 conviction. *Id.*

4. *Physical and Mental Health*

Defendant reports suffering from Osgood-Schlatter disease, a growth spurt condition; thyroid problems, an injury to his right ankle, pain in his left wrist, and poor vision. *Id.* ¶ 98. Defendant's right ankle injury resulted from playing basketball while incarcerated. *Id.* ¶ 99; Def.

Sent'g Mem. at 19–21. Defendant claims the original stress fracture transitioned into torn muscles and a torn ligament after the injury healed incorrectly. Sealed PSR ¶ 99. Defendant states his foot appears visibly swollen and deformed. *Id.*

Defendant has no history of diagnosed mental, emotional, or gambling conditions, but he reports feeling depressed and stressed. *Id.* ¶ 102.

       5.    *Substance Abuse*

Defendant has abused alcohol, marijuana, and Percocet (oxycodone and acetaminophen). *Id.* ¶¶ 103–06. Defendant started drinking and using marijuana at age fourteen or fifteen. *Id.* ¶¶ 104, 106. Defendant reports he first used non-prescribed Percocet at age twenty or twenty-one. *Id.* ¶ 105. He has not sought out substance abuse treatment. *Id.* ¶ 107.

       6.    *Nature and Circumstances of the Offense*

The Court's previous statements address the nature and circumstances surrounding the instant offense. *See supra* Part I.

    **B.**    **The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense, which involved twice robbing the same woman while her minor children were present. The Court's sentence also reflects the speed and nonchalance with which Defendant sold the stolen luxury handbags.

*See* Gov't Sent'g Mem., Exs. A & B at 1 (Victim Impact Statement); Sealed PSR ¶ 13. Lastly, the Court's sentence recognizes Defendant's lack of remorse in the years following the break-ins, during which he stated his intention to commit future robberies. Gov't Sent'g Mem. at 5. The Court's sentence will deter others from engaging in similar acts and justly punish Defendant for his crimes. Indeed, the Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a).

### C.     The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of Hobbs Act Robbery and one count of attempted Hobbs Act Robbery, both in violation of 18 U.S.C. § 1951(a). Plea Agreement ¶ 1. For each of these counts, Defendant faces a maximum term of imprisonment of twenty years and no minimum term of imprisonment. 18 U.S.C. § 1951(a). Defendant also faces a maximum term of supervised release of three years for each count. *Id.* § 3583(b)(2). If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. *Id.* § 3583(b) and (e). And Defendant is ineligible for probation on both counts. 18 U.S.C. §§ 3561(a)(3) and U.S.S.G. §5B1.1(b)(2)-(3).

In addition to facing terms of imprisonment and supervised release, Defendant faces numerous other penalties. Defendant faces a maximum fine of $250,000.00 on each count pursuant to 18 U.S.C. § 3571(b)(3). However, Defendant appears unable to pay a fine. Sealed PSR ¶ 121. Defendant's counts of conviction are subject to forfeiture allegations as outlined in the Amended Order of Forfeiture. Amended Order of Forfeiture, ECF No. 129; *see also* Plea

Agreement ¶ 6. Defendant also faces mandatory restitution in this case pursuant to 18 U.S.C. § 3663A. However, the final amount of restitution is unknown at this time. *See* Sealed PSR ¶ 136; Def. Objections to PSR at 4–6. Per guidance from *United States v. Catoggio*, 326 F.3d 323, 328 (2d Cir. 2003), the Court should not order restitution when losses incurred by the victim are not identified. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victims. Finally, the Court is required to impose a mandatory special assessment of $100.00 per count pursuant to 18 U.S.C. § 3013(a)(2)(A), for a total of $200.00.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . [t]he applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A). The applicable Guidelines provision for violations of 18 U.S.C. § 1951(a) is U.S.S.G. § 2B3.1. This provision provides for a base offense level of 20.

The parties agree certain enhancements apply in this case. First, U.S.S.G. §2B3.1(b)(2)(A) authorizes a four-level enhancement for Defendant's use of a dangerous weapon, including using the weapon to threaten Jane Doe One and her minor children. Gov't Sent'g Mem. at 6. Second, U.S.S.G. §2B3.1(b)(4)(B) features a two-level enhancement for physically restraining any person to facilitate the commission of the offense. Here, Defendant used zip ties to restrain the victims. *Id.* Third, U.S.S.G. §3A1.1(b) provides for a two-level enhancement for Defendant's knowledge that a victim of the offense was a vulnerable victim. *Id.* Indeed, Defendant exchanged texts with a co-defendant before the robbery in which he acknowledged Jane Doe One's minor children might be present during the robbery and

10

pointedly stated he did not care. Sealed PSR ¶ 12; *see also United States v. Chubalashvili*, 17-CR-709, 2023 WL 583119, at *5 (E.D.N.Y. Sept. 8, 2023) (Kuntz, J.) (applying the vulnerable victim enhancement where the defendant pointed his weapon at a minor during a Hobbs Act robbery). Defense counsel disputes this enhancement, even though the Court recognized this enhancement for both co-defendant Catoe and co-defendant Mitchell. *See* Memorandum & Order as to Romel Catoe, ECF No. 126; Memorandum & Order as to Kareef Mitchell, ECF No. 147.

The offense level is also enhanced by U.S.S.G. §2B3.1(b)(7)(B), which authorizes a one-level enhancement for cases in which the loss amount exceeds $20,000.00 and is below $95,000.00. Here, the parties disagree on the exact value of the stolen property, but the Government argues, and Probation agrees, the loss is greater than $20,000.00. *See* Gov't Sentencing Mem. at 6; Sealed PSR Addendum at 3. Finally, the parties all agree the offense level is subject to an additional two-level enhancement pursuant to the multiple-count adjustment at U.S.S.G. §3D1.4(a)–(c). This results in a combined adjusted offense level of 31 for Probation and the Government, and 28 for Defense. Sealed PSR ¶¶ 51–73; Gov't Sent'g Mem. at 6–7; Def. Sent'g Mem. at 31 (Addendum A).

All parties agree certain reductions to the total offense level apply here, including a two-level reduction under U.S.S.G. §3E1.1(a) (Acceptance of Responsibility) and a one-level reduction under U.S.S.G. §3E1.1(b) (timely notice to the Government of Defendant's intention to plead guilty). *See* Plea Agreement ¶ 2; Gov't Sent'g Mem. at 7. The Government and Defense agreed to an additional one-level reduction under the public policy goals enunciated in U.S.S.G. §5K2.0. *See* Plea Agreement ¶ 2; Gov't Sent'g Mem. at 7; Sealed PSR ¶ 143. These reductions result in a total offense level of 27 for Probation and the Government, and 24 for

Defense. Sealed PSR ¶¶ 51–73; Sealed PSR Addendum at 3; Gov't Sent'g Mem. at 6–7; Def. Sent'g Mem. at 31 (Addendum A).

Probation recommends a low-end-Guidelines sentence of eighty-seven months' imprisonment, to run consecutively to Defendant's state term; two years of supervised release with special conditions; restitution in an amount to be determined; and payment of the mandatory two hundred dollar ($200.00) special assessment. Sealed U.S. Probation Department Sentence Recommendation at 1, ECF No. 103-1; Sealed Revised U.S. Probation Department Sentence Recommendation at 1. The Government recommends a Guidelines sentence of between seventy-eight and ninety-seven months' imprisonment, to run consecutively to Defendant's state sentence; and restitution in the amount of $39,500.00. Gov't Sent'g Mem. at 1, 11. Defense counsel requests a sentence of no more than seventy-eight months' imprisonment. Def. Sent'g Mem. at 2. This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Probation argues the Court may consider the fact Defendant was awaiting sentencing in Oklahoma for another offense when he committed the instant offense. Sealed PSR ¶ 142; U.S.S.G. §§4A1.3(a)(1) (Departures Based on Inadequacy of Criminal History Category – Policy Statement), (a)(2)(D).

Finding no other policy statements on its own, the Court proceeds to the next § 3553(a) factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defense counsel argues Defendant should not be sentenced to more than seventy-eight months because his co-defendant Catoe had a total adjusted offense level of 27, which, along with a criminal history category of II, yields a range of seventy-eight to ninety-seven months' imprisonment. Def. Sent'g Mem. at 2 n.4; U.S.S.G. Ch. 5, Pt. A. Co-defendant Catoe likewise pled to Counts Two and Three of the Superseding Indictment in this case. *See* Plea Agreement as to Romel Catoe, ECF No. 83. On January 10, 2025, the Court sentenced co-defendant Catoe to 120 months' imprisonment. Memorandum & Order as to Romel Catoe, ECF No. 126; Judgment as to Romel Catoe, ECF No. 124.

For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within ninety days after this sentencing to determine the specific amounts owed to Defendant's victims.

## IV. CONCLUSION

For the reasons set forth above, the Court sentences Defendant to 120 months of custody, to run consecutively to his current state sentence; to be followed by three years of supervised

release with both the standard and special conditions of supervised release; restitution in an amount to be determined; forfeiture in accordance with the Amended Order of Forfeiture; and the mandatory $200.00 special assessment. This sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine given Defendant's apparent inability to pay. The Court does not excuse Defendant from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The Court expressly adopts the factual findings of the Sealed Presentence Investigation Report and the Addendum thereto, as corrected herein, to the extent those findings are not inconsistent with this opinion.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 14, 2025
       Brooklyn, New York